1    RICHARD A. GAMMICK
     Washoe County District Attorney
2
     HERBERT B. KAPLAN
3    Deputy District Attorney
     Nevada State Bar 7395
4    P.O. Box 11130
     Reno, NV 89520-0027
5    (775) 337-5700

6    ATTORNEY FOR WASHOE COUNTY

7                 UNITED STATES DISTRICT COURT

8                       DISTRICT OF NEVADA

9                              * * *

10   VIKTORIYA SOKOL SUNDE et al. ,

11          Plaintiffs,                 Case No.  3:12-CV-00416-RCJ-WGC

12          vs.                         **PROPOSED ORDER GRANTING
                                        MOTION FOR SUMMARY JUDGMENT**
13   MICHAEL HALEY et al.,

14          Defendants.
     _____/

15

16          This matter was initiated by Plaintiff, VIKTORIYA SOKOL SUNDE, by the filing of a

17   complaint on August 7, 2012.  The Complaint alleged approximately 19 different federal and

18   state law claims.  Included as a plaintiff in that complaint was J. Michael Sunde, Ms. Sunde's

19   husband.  Defendants filed motions to dismiss, which were granted in part and denied in part by

20   virtue of the Court's Order entered on March 7, 2013.  (Doc #32)  In sum, the Court granted the

21   motions to dismiss with the exception of the excessive force claim against only Deputy Lightner

22   and the unlawful arrest claim against both Deputy Lightner and Deputy Shigeta, which are the

23   only surviving claims.  The Court also dismissed all claims brought by J. Michael Sunde, leaving

24   only Ms. Sunde as the sole remaining plaintiff.

25          Deputy Lightner and Deputy Shigeta filed a motion for summary judgment on March 28,

26   2014.  That motion is presently before the Court for adjudication.

                                      -1-

1    Ms. Sunde failed to file any opposition to that motion for summary judgment.  Pursuant

2    to LR 7-2(d), "The failure of an opposing party to file points and authorities in response to any

3    motion shall constitute a consent to the granting of the motion."

4    **I.    FACTS**

5    The material facts not genuinely in issue, or those which cannot be genuinely disputed,

6    involved in this matter are as follows.

7    On August 18, 2010, Ms. Sunde was a party in a hearing being conducted in Department 6 of the

8    Second Judicial District Court, in and for Washoe County, State of Nevada.  Complaint (Doc #1)

9    at p. 1, &1.  The Honorable Brent Adams presided over the August 18, 2010 hearing.  Deputy

10   Charles Lightner is a deputy sheriff and was acting in the capacity as bailiff for Judge Adams'

11   courtroom on that date.  Complaint (Doc #1) at p. 4, &10.  Deputy Robert Shigeta is a deputy

12   sheriff and was acting in that capacity as he was present in Judge Adams' courtroom.  Complaint

13   (Doc #1) at p. 4, &11.

14   Prior to the hearing on August 18, 2010, Deputy Malloy informed Deputy Lightner that

15   Ms. Sunde had been involved in another incident at the courthouse in which she was disruptive

16   to the extent that deputies were summoned to intervene.  The prior incident occurred in July

17   2010 when Ms. Sunde appeared at the courthouse along with her husband.  At that time, Ms.

18   Sunde and her husband, J. Michael Sunde, were seeking an immediate hearing due to actions

19   taken in connection with the paralegal business the subject of that underlying litigation. Ms.

20   Sunde was very upset and agitated at the time due to the actions of William O'Mara and David

21   O'Mara, the attorneys who were representing the adverse party in the underlying litigation.  Due

22   to Ms. Sunde's behavior at the courthouse that day, deputies were summoned to intervene to stop

23   Ms. Sunde's disruptive behavior.

24   On August 18, 2010, while the hearing was in progress, Judge Adams admonished Ms.

25   Sunde several times for disrupting the proceedings.  At the afternoon break, Judge Adams had

26   informed Deputy Lightner, in an effort to maintain the order and decorum of the proceedings,

1    that he should remove Ms. Sunde from the courtroom if she spoke or disrupted the hearing again.

2    After the hearing had reconvened following the afternoon break, Ms. Sunde spoke a few words

3    from counsel table while her husband was testifying on the witness stand, and was immediately

4    ordered by Judge Adams removed from the courtroom.[1]  After Judge Adams had ordered Ms.

5    Sunde removed from the courtroom, he stated, "I also want to note for the record that Mrs.

6    Sunde, despite the admonition of the Court, has continued to speak out during these proceedings,

7    and that will not be permitted.  That's why, a few moments ago, she was removed from the

8    courtroom.  If she resists the conduct of the bailiff in enforcing decorum of the courtroom, she

9    will be arrested and taken into custody.  I will not permit any outburst on the part of any party to

10   this proceeding, they'll be dealt with severely by the Court."

11          Deputy Lightner, pursuant to Judge Adams' order, approached Ms. Sunde and asked her

12   to leave the premises.  Ms. Sunde initially resisted the order to leave the courtroom, refusing to

13   comply and huffed.  Deputy Lightner, pursuant to Judge Adams' order, escorted Plaintiff out of

14   the courtroom.  Deputy Lightner used a light touch in escorting Plaintiff out of the courtroom.

15   Deputy Shigeta opened the courtroom door for Deputy Lightner and Ms. Sunde to exit the

16   courtroom.  Almost immediately upon entering the vestibule area outside of the courtroom, Ms.

17   Sunde turned her back to the wall and turned in an aggressive manner facing Deputy Lightner

18   and said something to Deputy Lightner, during which time she struggled against the hold of

19   Deputy Lightner on her arm, pulling out of the light touch.

20          Ms. Sunde raised her right hand during the incident.  Deputy Lightner perceived Ms.

21   Sunde's actions as aggressive and threatening.  Deputy Lightner then turned Ms. Sunde away

22   from him, and gained control of her against the wall of the vestibule area, while placing her arm

23   behind her back in a rear wristlock hold.  The incident in the vestibule area happened very

24   quickly.  "It happened in an instant."  Deputy Lightner was reacting and acting as he had been

25   _____

26   [1] Plaintiff alleges that court was in recess at the time she was ordered removed.  Complaint at pp.
     6-7, at &25.  The record clearly indicates that court was not in recess.  In any event, this fact is of
     no significance and does not create an issue of fact that would preclude summary judgment.

1    trained in the police academy.  Deputy Shigeta then placed Ms. Sunde in handcuffs.  Ms. Sunde

2    initially resisted the application of the handcuffs, but eventually cooperated.  The handcuffs were

3    placed on Ms. Sunde in an attempt to calm her down, as she continued to yell and scream at the

4    deputies.  Deputy Lightner did not hit Ms. Sunde on the wrists with handcuffs or anything else.

5    The application of the handcuffs was not done with any intention to injure or punish Ms. Sunde.

6    After Deputy Lightner once again had control of Ms. Sunde, he and Deputy Shigeta took her out

7    of the vestibule area and seated her outside of the courtroom.  Deputy Lightner remained

8    standing next to Ms. Sunde and the two continued a conversation, with Ms. Sunde being very

9    animated at times, shouting profanities.  Deputy Shigeta stood nearby.

10          After Deputy Lightner realized that Ms. Sunde was not going to calm down, as she

11   continued to exhibit hostile behavior, he returned to the courtroom to resume his bailiff

12   responsibilities as the hearing was still ongoing and court was still in session, and other deputies

13   had arrived.  At that time, Deputy Shigeta assumed a position standing next to Ms. Sunde.  Ms.

14   Sunde was red in the face during the duration of the incident and was very agitated and angry.

15   At no time during the incident did Deputy Lightner smile, smirk or appear to be enjoying the

16   incident with Ms. Sunde; instead, Deputy Lightner was focused on quickly resolving the

17   situation and attempting to calm down Ms. Sunde.  Two other Washoe County Deputies arrived

18   at the scene when Deputy Lightner returned to the courtroom.  Video at 4:49:03.  Sergeant

19   Hamilton approached Ms. Sunde and had his K9 sit next to him while he and other deputies tried

20   to calm Ms. Sunde down.  Ms. Sunde continued yelling at the deputies in an animated fashion,

21   yelling obscenities at them and was very angry.  Ms. Sunde was then escorted out of the hallway

22   area to the portion of the facility to prepare her for transport to the Washoe County Jail.  Video at

23   4:55:27.  Ms. Sunde was placed in chains for transport including on her waist, wrists, and around

24   her neck.

25          During the time Ms. Sunde was in the holding area, Deputy Lightner was completing the

26   probable cause sheet, which required him to obtain information from Ms. Sunde.  Ms. Sunde

-4-

refused to answer Deputy Lightner's questions, responding only to Deputy Kellie Wright.  Ms. Sunde continued to yell between answering questions and had trouble maintaining focus.  Upon her arrival at the jail facility, Ms. Sunde was seen by Andrea O'Brien in Intake.  Ms. Sunde complained of a swollen right arm and pain in her right wrist area.  The injuries consisted of "discoloration on her right arm on the triceps" and some redness on her wrist after "Sokol continued to rub the area while she attempted to speak" with the deputy.

Deputy Lightner has no connection to or familial or other affiliation with any of the other participants, including Judge Adams, David O'Mara or anyone else involved in the underlying civil lawsuit in connection with which Ms. Sunde appeared in Department 6 on August 18, 2010.

There was no preplanned scheme on the part of Deputy Lightner, Judge Adams and David and Bill O'Mara to treat Ms. Sunde any differently than anyone else.  Any conversation that occurred between Deputy Lightner and David O'Mara prior to or during the course of the court proceeding was nothing more than friendly discussion of ordinary everyday nature that one would have with an acquaintance and the same type in which David O'Mara engages with many of the other Court bailiffs.

On August 25, 2010, the Washoe County District Attorney's Office filed a Criminal Complaint charging Ms. Sunde with Disturbing the Peace, a misdemeanor, and Resisting a Public Officer, a misdemeanor, after conducting an independent investigation.  On or about December 2, 2010, the Washoe County District Attorney's Office dismissed the criminal action, noting "insufficient evidence" to proceed with the case.  Deputy Lightner was exonerated in connection with the internal review of the incident conducted by the Office of Professional Integrity.

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  In determining summary judgment, a court uses a burden shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp*., 477 U.S. at 323-24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

1  allegations of the pleadings and set forth specific facts by producing competent evidence that

2  shows a genuine issue for trial.  See Fed. R. Civ. P. 56(e); *Celotex Corp.,* 477 U.S. at 324.

3       At the summary judgment stage, a court's function is not to weigh the evidence and

4  determine the truth, but to determine whether there is a genuine issue for trial.  *See Anderson,*

5  477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences

6  are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely

7  colorable or is not significantly probative, summary judgment may be granted.  *See id.* at 249-50.

8  **III.    ANALYSIS OF CLAIMS**

9       There are two remaining claims in this case:  1) unlawful arrest claim asserted against

10  both Deputy Lightner and Deputy Shigeta; and 2) excessive force claim asserted against only

11  Deputy Lightner.

12            **A.      UNLAWFUL ARREST CLAIM**

13       U.S.C.A. Const. Amend. IV provides

14       The right of the people to be secure in their persons, houses, papers, and effects,
        against unreasonable searches and seizures, shall not be violated, and no Warrants
15       shall issue, but upon probable cause, supported by Oath or affirmation, and
        particularly describing the place to be searched, and the persons or things to be
16       seized.

17       For any warrantless arrest to be constitutional, probable cause must exist at the time of

18  the arrest.  *Allen v. City of Portland,* 73 F.3d 232, 236-237 (9th Cir.1995).  "[I]f an officer has

19  probable cause to believe that an individual has committed even a very minor criminal offence in

20  his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v.*

21  *Lago Vista*, 532 U.S. 318, 354 (2001).  Probable cause requires "only the probability, and not a

22  prima facie showing, of criminal activity."  *Franklin v. Fox*, 312 F.3d 423, 438 (9th

23  Cir.2002)(quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)).

24       Probable cause exists so long as the arresting officer has probable cause to arrest the

25  suspect for any criminal offense, regardless of the stated reason for the arrest.  *Davenpeck v.*

26  *Alford,* 543 U.S. 146, 153-55 (2004).  In determining whether probable cause exists, "[A]ll facts

1   known to the arresting officer and all reasonable inferences that could be drawn are considered."

2   *United States v. Thornton*, 710 F.2d 513, 515 (9th Cir.1983) (*citing Gerstein v. Pugh*, 420 U.S.

3   103, 111-14 (1975).  "[P]robable cause exists where under the totality of the circumstances

4   known to the officer, a prudent person would have concluded that there was a fair probability

5   that the suspect had committed or was committing a crime.  *United States v. Noster*, 590 F.3d

6   624, 629-30 (9th Cir. 2009).  Because probable cause must be evaluated from the perspective of

7   "prudent men, not legal technicians," *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct.

8   1302, 1311, 93 L.Ed. 1879 (1949), an officer need not have probable cause for every element of

9   the offense.  *United States v. Thornton*, 710 F.2d 513, 515 (9th Cir.1983).

10   Additionally, the United States Supreme Court has recognized that officers can have

11   reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause,

12   without holding the officers liable for having violated the arrestee's constitutional rights.

13   *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

### 1.     Probable Cause Existed

15   Ms. Sunde was arrested on August 18, 2010.  A criminal complaint was filed by the

16   Washoe County District Attorney's Office containing one count for Disturbing the Peace, a

17   violation of Washoe County Code 53.140 and 125.050, NRS 203.010, a misdemeanor, and one

18   count for Resisting a Public Officer, Washoe County Code 53.200 and 125.050, a misdemeanor.

19   Those charges were dismissed by the Washoe County District Attorney's Office based on

20   "insufficient evidence."

21   Despite the criminal charges having been dismissed, there was probable cause to arrest

22   Ms. Sunde.

23   Defendants have met their burden to show that probable cause existed.

24   Ms. Sunde's conduct, as evidenced on the video of the incident, and as further evidenced

25   by the affidavits filed herein, was offensive and threatening, as she was verbally abusive and

26   hysterical in the Washoe County Courthouse.  She willfully disturbed the peace both in the

1  courtroom, in the vestibule area, and outside of the courtroom due to her loud and offensive

2  conduct.  There was probable cause to arrest Ms. Sunde under Washoe County Code 53.140

3  (Disturbing the peace).

4        Ms. Sunde willfully resisted Deputy Lightner as he attempted to peacefully escort her

5  from the courtroom.  Specifically, Ms. Sunde pulled away from Deputy Lightner and turned

6  toward him, thereby delaying and obstructing Deputy Lightner from discharging his duty as a

7  bailiff.  Resistance "runs the gamut from the purely passive protestor who simply refuses to

8  stand, to the individual who is physically assaulting the officer."  *Bryan v. MacPherson*, 630

9  F.3d 805, 830 (9th Cir.2010).  Even passive resistance may support the use of some degree of

10  governmental force if necessary to attain compliance.  *Id.*  There was probable cause to arrest

11  Ms. Sunde under NRS 199.280 and/or Washoe County Code 53.200 (Resisting public officer).

12        In addition, Ms. Sunde's conduct interfered with the peaceful conduct normally carried

13  out in the Washoe County Courthouse.  That building is undoubtedly a "public building."  Ms.

14  Sunde was requested to leave the building due to her behavior and refused to do so, having to

15  have Deputy Lightner and others assist her leaving.  There was probable cause to arrest Ms.

16  Sunde based on NRS 203.119 (Commission of act in public building or area interfering with

17  peaceful conduct of activities) as well.

18        Accordingly, Plaintiff's wrongful arrest claim must fail, as there is no genuine dispute as

19  to any material fact and Deputy Lightner and Deputy Shigeta are entitled to judgment as a matter

20  of law.

21        **2.      Qualified Immunity For Arrest**

22        In the alternative, Deputy Lightner and Deputy Shigeta are entitled to qualified immunity

23  in connection with the arrest.

24        An officer who makes an arrest without probable cause may still be entitled to qualified

25  immunity if he reasonably believed there to have been probable cause.  *See Ramirez v. City of*

26  *Buena Park,* 560 F.3d 1012, 1024 (9th Cir.2009).  The linchpin of the qualified immunity

1    analysis is the reasonableness of the officer's conduct in the particular case at hand.  *Anderson,*

2    483 U.S. at 638, 107 S.Ct. 3034.

3           Under 42 U.S.C. §1983, all governmental employees engaged in their professional

4    capacity are entitled to at least qualified immunity from suit.  The fundamental purpose served

5    by permitting officials to assert this defense is to prevent "excessive disruption of government"

6    by enabling a resolution of liability claims against officials at the earliest possible time.  *Harlow*

7    *v. Fitzgerald,* 457 U.S. 800, 818(1982).  Qualified immunity balances "the need to hold public

8    officials accountable when they exercise power irresponsibly and the need to shield officials

9    from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson*

10   *v. Callahan,* 129 S. Ct. 808, 815 (2009).

11          The linchpin of qualified immunity is objective reasonableness.  *Anderson,* 483 U.S. at

12   639, 107 S.Ct. 3034.  So long as the officer's actions, viewed from the perspective of the officer

13   at the time, can be seen to be within the range of reasonableness, then no liability will attach.

14   *See id.*

15          The dispositive question is "whether it is reasonably arguable that there was probable

16   cause for arrest-that is, whether reasonable officers could disagree as to the legality of the arrest

17   such that the arresting officer is entitled to qualified immunity."  *Rosenbaum v. Washoe Cnty.,*

18   663 F.3d 1071, 1076 (9th Cir. 2011).

19          Here, it would not be clear to all reasonable officers that Plaintiff was not committing a

20   crime.  As set forth in more detail hereinabove, it would be entirely reasonable for an officer to

21   believe that Ms. Sunde was committing the crimes of 1) Resisting a Public Officer, 2) Disturbing

22   the Peace, and 3) Commission of act in public building or area interfering with peaceful conduct

23   of activities.  The evidence in this case supports such a finding.  At the very least, reasonable

24   officers could disagree as to the legality of the arrest such that the arresting officers are entitled

25   to qualified immunity.  Accordingly, even if probable cause did not exist, Deputy Lightner and

26   Deputy Shigeta would be entitled to a grant of qualified immunity.

-10-

1

2        **B.      EXCESSIVE FORCE CLAIM FAILS**

3               When effecting an arrest, the Fourth Amendment requires that officers use only such

4        force as is "objectively reasonable" under the circumstances.  *Jackson v. Cty. of Bremerton,* 268

5        F.3d 646, 651 (9th Cir.2001).  "The 'reasonableness' of a particular use of force must be judged

6        from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

7        hindsight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989).  To determine

8        whether the force used was reasonable, we must balance "the nature and quality of the intrusion

9        on the individual's Fourth Amendment interest against the countervailing governmental interests

10       at stake." *Id.* (internal quotation marks omitted).  All determinations of unreasonable force,

11       however, "must embody allowance for the fact that police officers are often forced to make split

12       second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the

13       amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396B97, 109

14       S.Ct. 1865.

15              In the instant case, Deputy Lightner was presented with a very volatile situation.  Ms.

16       Sunde was extremely upset by the course of proceedings in the litigation in which she was

17       involved.  Deputy Lightner knew that Ms. Sunde had already exhibited an inability to control

18       herself in that same public building, requiring the summoning of numerous deputies to intervene

19       a month prior to the incident at issue here.  Deputy Lightner had been present in court during

20       which Ms. Sunde repeatedly disrupted the proceedings, requiring Judge Adams to admonish her

21       as to appropriate conduct in the courtroom.  Ms. Sunde was agitated.  Ms. Sunde was ordered

22       removed from the courtroom and she was resisting that order.  Deputy Lightner perceived Ms.

23       Sunde's actions as aggressive and hostile.  He believed that Ms. Sunde was going to assault him.

24       Considering the information known to Deputy Lightner at the time, it was reasonable for him to

25       perceive Ms. Sunde as a threat to his safety.  Ms. Sunde was actively resisting Deputy Lightner.

26       In fact, Ms. Sunde began resisting Deputy Lightner when he had approached her in the

         courtroom and indicated that she had to leave the courtroom.  While that resistance subsided

-11-

1    temporarily while she walked from counsel table to the doorway exiting the courtroom, Ms.

2    Sunde almost immediately began resisting again once through the doorway.  When Deputy

3    Lightner attempted to merely control Ms. Sunde, who had been aggressive and hostile toward

4    Deputy Lightner, she continued to resist him.

5        Deputy Lightner also had very little time to determine the type and amount of force that

6    appeared to be necessary.  This was a quickly evolving situation, which everyone involved

7    acknowledges.  Deputy Lightner was forced to react quickly.

8        As the United States Supreme Court has recognized,

9        Not every push or shove, even if it may later seem unnecessary in the peace of a
         judge's chambers, violates the Fourth Amendment.  The calculus of
10       reasonableness must embody allowance for the fact that police officers are often
         forced to make split second judgments-in circumstances that are tense, uncertain,
11       and rapidly evolving-about the amount of force that is necessary in a particular
         situation.
12

13   *Graham*, 490 U.S. at 396-97 (citation omitted) (internal quotation marks omitted).

14       The United States Supreme Court has warned against "unrealistic second-guessing" of a

15   police officer acting "in a swiftly developing situation."  *United States v. Sharpe*, 470 U.S. 675,

16   686 (1985).  "The question is not simply whether some other alternative was available, but

17   whether the police acted unreasonably in failing to recognize or to pursue it."  *Id.* at 687; *see also*

18   *Sokolow,* 490 U.S. at 10 (reasonableness of officer's decision to forcibly detain suspect does not

19   turn on availability of less intrusive investigatory techniques).

20       Ms. Sunde's version of events is contradicted by the video and by reality.  The

21   allegations she makes are simply implausible-no reasonable juror could believe it.

22       When faced with this threat, Deputy Lightner, in a very swiftly developing situation,

23   merely took action to gain control of Ms. Sunde, who was struggling against him doing so.  His

24   actions were reasonable under the circumstances.  The force used cannot be considered to be

25   excessive under the circumstances, which included having to make a split second decision as to

26   how to respond to a hostile, aggressive woman who was known to have had other incidents at the

-12-

1   courthouse that required intervention on the part of deputies, and who had throughout the course

2   of the proceeding from which she was removed shown a total disregard for the sanctity of the

3   courtroom or the proceedings.  There was no intent to harm Ms. Sunde and there is nothing in the

4   record to suggest that that was the motivation.

5          The force used, viewed in the context of a  reasonable officer on the scene and allowing

6   for the fact that officers often have to make split-second decisions under evolving and uncertain

7   circumstances, was "objectively reasonable"  under the circumstances.

8          For those reasons, the excessive force claim fails.  There is no genuine dispute as to any

9   material fact and Deputy Lightner is entitled to judgment as a matter of law.

10  **IV.    CONCLUSION**

11         IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 107) is

12  GRANTED.

13         IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

14         IT IS SO ORDERED.

15         Dated this 25th day of September, 2014.

16

17

18  ROBERT C. JONES
    United States District Judge

19

20

21

22

23

24

25

26

-13-